1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF NEW YORK

3   WINDWARD BORA LLC,            .   Docket No.
                                 .   20-cv-05320-DG-MMH
4        Plaintiff,              .
                                 .
5           v.                   .   Brooklyn, New York
                                 .   Tuesday, December 14, 2021
6   IRA THOMAS, et al.,          .   10:13 a.m.
                                 .
7        Defendants.             .
    . . . . . . . . . . . . . .  .
8

9

          TRANSCRIPT OF A TELEPHONIC MOTION HEARING
10           BEFORE THE HONORABLE MARCIA M. HENRY
             UNITED STATES MAGISTRATE JUDGE
11
    APPEARANCES:
12
    For the Plaintiff:          The Margolin & Weinreb Law Group,
13                              LLP
                                ALYSSA L. KAPNER, ESQ.
14                              165 Eileen Way
                                Suite 101
15                              Syosset, New York  11791
                                516-945-6055
16

17

18  Transcription Service:      Opti-Script, Inc.
                                P.O. Box 77
19                              Winfield, PA 17889
                                800-494-7500
20

21  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
22

23

24

25

1          P R O C E E D I N G S

2          THE CLERK:  Good morning.  This is a civil cause

3    for a motion hearing for case number 20-cv-5320, Windward

4    Bora LLC v. Thomas, et al.

5          As a reminder, pursuant to Local Civil Rule 1.8,

6    the parties may not independently record any court

7    proceedings.  A transcript of this proceeding may be ordered

8    from the clerk's office.

9          That being said, counsel for Plaintiff, please

10   state your appearance for the record.

11         MS. KAPNER:  Good morning, Your Honor.  My name is

12   Alyssa Kapner from The Margolin & Weinreb Law Group for the

13   Plaintiff, Windward Bora LLC, and I have this morning filed a

14   notice for appearance on the docket.

15         THE COURT:  Good morning, Ms. Kapner.  I have seen

16   your notice of appearance, so thank you for that.

17         THE CLERK:  And there is no appearance for the

18   Defendants, Judge.

19         THE COURT:  For either Defendant?

20         THE CLERK:  That's correct.

21         THE COURT:  All right.  Thank you very much.

22         All right.  So Ms. Kapner, we are here on a motion

23   for default judgment.  And let me just do a quick recap of my

24   understanding of the procedural history of this case.

25         The complaint was filed on November 3rd of 2020,

1    essentially requesting to foreclose on a mortgage for a

2    property in Queens. There were a couple of affidavit for

3    affirmations that were filed with the complaint regarding

4    compliance with various foreclosure-related moratoriums that

5    were issued by New York State, as well as the federal

6    government, and I will return to those later when we get to

7    the substance of the motion.

8         As I see here, the case had originally been

9    assigned to Judge Cogan and then subsequently was reassigned

10    to Judge Gujarati, who's the currently assigned District

11    Judge. Similarly, Judge Bulsara had been assigned to the

12    case and then it was subsequently reassigned to me.

13         Now, I do see two returned summonses executed on --

14    as of December 23rd -- yes -- of 2020, at docket numbers 11

15    and 12, as to both Defendant Ira Thomas and then Defendant

16    New York City Environmental Control Board who we'll just call

17    ECB for the purposes of this proceeding.

18         And then subsequently there was a request for a

19    certificate of default as to both Defendants, and that -- now

20    interestingly, in February of 2021, ECB filed a notice of

21    appearance and counsel is listed on the docket. That counsel

22    has not appeared today. And again, Ms. Kapner, I'll return

23    to that subject to ask you a little bit about any

24    interactions you may have had with counsel.

25         In any event, the clerk's entry of default was

1    filed on April 16th of 2021, at docket number 17, and then

2    the motion for default was filed on September 21st of 2021.

3    That motion was referred to me by Judge Gujarati for a report

4    and recommendations on September 22nd of 2021.

5              And I subsequently issued a notice for this hearing

6    and specifically sent that notice to Defendant Thomas at not

7    only the address in Queens that is the subject of this

8    foreclosure action but also to an address in Brooklyn that

9    was part of the papers.  And I do see that there's an

10   affidavit of service for that notice of hearing that was sent

11   to Defendant Thomas.

12             Have I missed anything in that procedural

13   recitation, Ms. Kapner?

14             MS. KAPNER:  No.  That seems pretty comprehensive.

15             THE COURT:  Okay.  So I've had an opportunity to

16   review all of the documents that I just rattled off and I

17   have some very specific questions regarding many different

18   elements of this motion.

19             I first want to understand -- again, because ECB is

20   not quite in the same posture as Defendant Ira Thomas because

21   ECB actually has at least appeared in this case.  So have you

22   or your colleague had any interaction with -- the counsel

23   listed of record for ECB is Michele Mirro?

24             MS. KAPNER:  No, Your Honor.  We have not.  This is

25   actually a very commonplace notice of appearance.  I'm just

looking at it right now from the docket that it's an
appearance and waiver. So they basically are putting in the
appearance so that they're notified regarding the sale to
determine if there are any surplus monies at the end of the
action that the ECB might be entitled to, so.

THE COURT: I see.

MS. KAPNER: Yeah. So they didn't file an answer.
It's merely just so they get notifications of what they want
to be notified of. So they're not contesting the action.

THE COURT: Well, that's interesting. All right.
That is a helpful explanation and I guess explains why Ms.
Mirro has not appeared today although, again, it's -- so that
leads to my second question relatedly.

Is the intention that the judgment here and
essentially all of the release that is being requested is
being requested as to Defendant Thomas?

MS. KAPNER: Yes. So as a little bit of, you know,
background explanation, so the Environmental Control Board
has what we have determined based on -- we receive a
foreclosure search before we start an action, and based on
that it was determined that there were Environmental Control
Board violations filed against the -- either the borrower or
the property, which are subordinate to my client's mortgage.
And I believe that those were attached to our complaint at
the end -- yes -- it's page --

1          THE COURT:  Yes.

2          MS. KAPNER:  Yes.  I see that.  Yes.

3          THE COURT:  Yes.  There are several of them, and I

4   did want to ask about those.  Since you did bring them up,

5   which I appreciate, I did want to ask about them because

6   there are multiple violations for multiple Ira Thomases, and

7   I guess I'm trying to determine which Ira Thomas is the

8   operative one.

9          MS. KAPNER:  Right.  So the reason why we include

10  all of those is merely because we are trying to cut those off

11  in our judgment of foreclosure and sale.  And it's really

12  just for going forward if we have a foreclosure sale so that

13  there is clear title for whatever happens after the

14  foreclosure sale.  If someone, third party, buys the property

15  or if it goes back to the Plaintiff, it would basically wipe

16  out any of the liens by the ECB that were filed prior to our

17  action being commenced regarding the borrower and/or the

18  properties.

19          So it's possible that not all of these are on the

20  head, as we call it, of either the borrower or the property,

21  but --

22          THE COURT:  Right.

23          MS. KAPNER:  -- we have to include them because if

24  we don't include them then something -- you know, we might

25  not have clear title in the end.

1    So only the ones that are actually applicable to

2    the property at the end of the day will be, you know, voided

3    if we get a judgment --

4         THE COURT:  Okay.

5         MS. KAPNER:  -- of foreclosure and sale and the

6    other ones won't remain open.

7         THE COURT:  No.

8         MS. KAPNER:  Also, as you see, like the first two,

9    which the first -- yeah, so especially the first two which

10   are large amounts, especially relative.  You see the other

11   ones, 100, 25, so we need to make sure that those are cut off

12   in order to get clear title going forward.

13        THE COURT:  Right.  And just for the record, in

14   part because there's likely going to be a transcript made of

15   this proceeding, the document that we're referring to is

16   Exhibit F to the complaint, which is document number 1-1 on

17   the docket and it starts on page 41.  Well, the exhibit page

18   F is at page 41 of 43.

19        And then page 42 of 43 starts the actual listing of

20   the violations.  And on that page -- yes, there are seven

21   violations and more continuing on the next page.  The first

22   are against an Ira C. Thomas at 1136 Bergen Avenue in

23   Brooklyn, but then the second two are against Thomas, Ira --

24   presumably, that's last name, first name at 146-35 182nd

25   Street in Springfield Gardens, which is the subject property

1  of this action.

2        Okay.  I just wanted to clarify because you were

3  talking about a document and hadn't actually referred to what

4  document -- where the document was on the docket.

5        Okay.  All righty.  This is very helpful background

6  and I appreciate you addressing and anticipating any

7  questions.

8        All right.  So now what I'd like to get back to are

9  the foreclosure moratoriums, which were referred to in

10  document number 3, the COVID-19 Pandemic Affirmation, and I

11  just want to make sure that I understand that this action

12  complies with those moratoriums.  So can you provide a little

13  bit more background around that, specifically whether or not

14  this was filed subsequent to the expiration of any applicable

15  moratoriums?

16        MS. KAPNER:  Sure.  So as you may know, there have

17  been many different moratoriums and many different iterations

18  of notice requirements throughout the pandemic since March of

19  2020 regarding what Plaintiffs or law firms or services need

20  to send to borrowers prior to actions and whether the

21  moratorium applies, et cetera.

22        So in this case, at the time that the action was

23  filed, the COVID-19 Pandemic Affirmation, which was filed as

24  docket number 3, was the affirmation which was required at

25  the time.  So because we're in federal court, the state

1   moratorium -- the -- you know, the outright moratorium did

2   not apply at this time and throughout this entire time.  What

3   we have been doing is if a borrower files or submits a

4   COVID-19 Hardship Declaration, then we stay the case.  But if

5   not, then we don't.

6          So we served this document on the borrower prior to

7   the action.  And I just want to pull up the affidavit of

8   service because -- yes, there is also the notice to the

9   Defendant regarding the COVID-19 Hardship Declaration was

10  also served on the borrower with the summons and complaint

11  and other notices that were filed at the time the complaint

12  was filed.

13         So that's basically how we've been proceeding is we

14  serve the documents prior to starting the action, and if we

15  got a response, then we would not proceed.  And then it's

16  also served at the time of the complaint and the same

17  thing -- the borrower has had an opportunity throughout this

18  entire case, whether we serve them or not with it, to, you

19  know, say that they have a COVID hardship and then the case

20  would be stayed based on that.

21         And in this case we have not received any

22  correspondence from the borrower.  And based on where the

23  borrower was served -- and we believe that he does not live

24  at the property being foreclosed so that might be a reason

25  why -- now, if it could be a -- it could just be another

1    property that he's renting out and not necessarily something

2    that, you know, he wants to have a -- you know, has a

3    hardship for. Maybe he doesn't have a hardship. And --

4            THE COURT: Sure.

5            MS. KAPNER: -- you know, we don't know.

6            THE COURT: Sure. Okay. Well first, again, you

7    are anticipating many of my questions, which I absolutely

8    appreciate. Let me just chime in with a couple of loose

9    ends.

10           So you said that the COVID Affirmation was served

11   before the action. Can you tell me the date?

12           MS. KAPNER: Yes. Hold on. I just want to look at

13   our complaint because I know in our complaint we weren't

14   pleading that -- the date, but we should have it in our --

15   hold on -- COVID letter envelopes. Okay.

16           Yes. They were sent on October 2nd, 2020.

17           THE COURT: Okay.

18           MS. KAPNER: Yeah. So I have a copy of the

19   envelopes and they were sent by certified mail and regular

20   mail. So you know what? Actually they were sent to the

21   property address on September 30th, it looks like, and they

22   were sent to -- so September 30th and October 2nd. So what

23   we were doing at this time is we were sending that out and

24   then waiting approximately 30 days -- at least 30 days before

25   filing the complaint because there really wasn't any specific

1   guidance or dates that were given by the state so we were --

2   we sort of just were being as, you know, generous as we could

3   and obviously, like, knowing that anything could be filed or

4   declared at any time during the case.

5          THE COURT:  Right.  Sorry.  Okay.  Thank you.  That

6   is also extremely helpful.

7          And then you made mention of -- when you said the

8   affidavit of service, I think you were referring to ECF

9   Number 11 --

10         MS. KAPNER:  Exactly.  Yeah.  Summons returned

11  executed, yes.

12         THE COURT:  Yes.  Which was the return executed

13  summons that was effected on Mr. Thomas, and I do note that

14  in that affidavit of service it indicates -- excuse me, that

15  the notices required -- I'm going to say the full law because

16  it's a transcript -- the Real Property Actions and

17  Proceedings Law, or RPAPL, R-P-A-P-L, Section 1303 notices

18  were also included with the summons and the complaint.

19         I did not see those notices in the papers.  Is that

20  something that you can provide?  Just so you know, I'm going

21  to be asking for several supplements following this hearing.

22  Can you provide copies of those documents?

23         MS. KAPNER:  Sure.  That document is a document

24  that usually our process server serves separately.  So it's

25  just like a form-like piece of paper that explains the

1  process of a foreclosure.

2          THE COURT:  Yes.

3          MS. KAPNER:  But it's definitely --

4          THE COURT:  It's the statutory notice, yes.

5          MS. KAPNER:  Yes.

6          THE COURT:  Yes.  I would like to see the one --

7  because many of the papers in support of the motion and the

8  complaint include other types of notices, like the default

9  notice and the 90-day notice, so I'd like to see the 1303

10 notice, as well.

11         MS. KAPNER:  Right.

12         THE COURT:  Okay.  Let's see what else.

13         All right.  So let's get into the motion papers

14 themselves, and we can start at -- the motion, I believe, is

15 docket number 18.

16         One of the first documents is the Declaration of

17 Regularity in Support, and if you have the document in front

18 of you, just let me know --

19         MS. KAPNER:  Yes.  Okay.

20         THE COURT:  -- when you're ready.

21         MS. KAPNER:  Yeah.  I do.  Yep.  I'm ready.

22         THE COURT:  Okay.  So this is document number 18-1,

23 and it's page 2 of 3, and it's paragraph 4, which is that

24 the -- this affirmation repeats everything in the Affirmation

25 in Support of the clerk's entry of default.

1     It's preferable to include that information in this

2   declaration so that we don't kind of have to go bopping back

3   and forth between this motion and the motion that was made to

4   the clerk's office.

5          MS. KAPNER:  Okay.

6          THE COURT:  So this is more of a practice pointer

7   because it's far easier for us to look at the motion when

8   everything is all together.  But as I understand, whatever is

9   in that affirmation is supposed to be incorporated by

10  reference into this one?

11         MS. KAPNER:  Yes.  I mean, it's basically just

12  reiterating that the Defendants were served and that their

13  time to answer expired and seeking that the clerk enter

14  default.

15         THE COURT:  All right.  Okay.

16         MS. KAPNER:  Understood.

17         THE COURT:  Okay.  Thank you.

18         The second point has to do with the next paragraph,

19  paragraph 5, and this is actually a big concern of mine

20  because in this declaration -- the Weinreb declaration, we'll

21  call it, document number 18-1, paragraph 5 says that the

22  affidavit of Yonel Devico -- have I pronounced that

23  correctly?

24         MS. KAPNER:  Yonel Devico.  But yeah.  I'm going

25  to --

1          THE COURT:  Devico -- the member of Windward Bora,

2     the Plaintiff, that the Devico affidavit was sworn to on the

3     30th day of August of 2021.  However, in looking at that

4     affidavit, which is at document number 18-6, I think, in the

5     motion papers -- looking at that affidavit at page 4, the

6     notary signature on that is dated August 30th of 2020, so.

7          MS. KAPNER:  Let's see if I --

8          THE COURT:  Let me know when you're there.

9          MS. KAPNER:  Yes.  I see it.  That was a typo.  It

10    should have been in the year 2021 on the notary.

11         THE COURT:  Right.  The problem here though is that

12    that's the factual basis for much of your damages

13    calculations, as well as other assertions in the memorandum

14    of law, and so if the notary's signature is not valid then I

15    would need to have a new notarized affidavit to look at.

16         MS. KAPNER:  Okay.

17         THE COURT:  Now, given that, the other questions I

18    had were actual factual questions about the calculations of

19    damages.  So to the extent that you believe that the

20    information will be the same in the revised affidavit, I do

21    have to ask whether or not there are any damages or amounts

22    due that are being requested beyond the period between

23    February 1st of 2020 and July 27th of 2021?

24         MS. KAPNER:  Yes.  So what we do when we calculate

25    that is we calculate it and then we send it to the client to

1   be reviewed and executed.  So if we do a revised affidavit we

2   might extend the date to whenever it's prepared.

3               THE COURT:  Okay.

4               MS. KAPNER:  And as you may see in the proposed

5   judgment order, which is docket 18-3 --

6               THE COURT:  Yes.

7               MS. KAPNER:  -- on the first page, the third

8   paragraph sets forth that X amount is due as of --

9               THE COURT:  Yes.

10              MS. KAPNER:  -- whatever the date.

11              THE COURT:  Yes.

12              MS. KAPNER:  Then on page 3 of 6, paragraph 3rd,

13  again, it recites that.  So that is the judgment amount that

14  we're seeking, but when we, you know, proceed with setting an

15  amount that for -- we called an upset bid, if we go to a

16  foreclosure auction, amount that we would, you know, be

17  seeking in order to be made whole, we would potentially add,

18  you know, interest up until that date.

19              But you know, we can set whatever bid we want.  You

20  know, we can include whatever we want to include in that, but

21  for the judgment itself we're just seeking the amount that's

22  due up until the date in the proposed judgment.

23              THE COURT:  Okay.  And so, no, that does make

24  sense.  If I understand you correctly, you are going to get a

25  revised affidavit.  You may then extend the date past July

1  27th of 2021, up to the new date of preparation of the

2  affidavit. And then you request a judgment in that amount?

3      MS. KAPNER: We'll only do that if we're going to

4  be submitting a whole new motion because then the rest of the

5  motion wouldn't necessarily be valid, but -- so we can talk

6  about that. But as you see, we calculate the per diem, so

7  the daily amount --

8      THE COURT: Yes.

9      MS. KAPNER: -- so basically, what we would do is

10 just add the amount, you know, from July 27th, however many

11 days times 22.02 to get the amount that we would be seeking

12 just so it would be the most, like, up to date figure.

13     THE COURT: Okay. All right.

14     I'm just looking through my notes to make sure I've

15 covered all of the questions that I have here. Give me one

16 moment.

17     Okay. So what I have as the, I guess, supplement,

18 and this can just be a letter to the extent that you need to

19 explain anything and then attaching the documents -- a

20 separate exhibit, please, just so that we can keep track of

21 which documents are which.

22     MS. KAPNER: Sure.

23     THE COURT: So far I have RPAPL Section 1303

24 notices and then the sworn Devico affidavit.

25     MS. KAPNER: Okay. I think that just to make it

1    easier regarding the affidavit, we'll probably just keep all

2    the dates and the figures the same so that it doesn't, you

3    know, confuse the proposed judgment order and everything else

4    that we've already submitted.

5              THE COURT:  Okay.  That's fine.

6              All right.  And how soon can -- how much time do

7    you need for this?

8              MS. KAPNER:  I mean, quickly, but I just don't know

9    how quickly my client can get back to me.  So I would say by

10   the --

11             THE COURT:  I was going to --

12             MS. KAPNER:  -- end of next week?

13             THE COURT:  Oh, I was going to give you until

14   January 6th, but --

15             MS. KAPNER:  Okay.

16             THE COURT:  -- why don't I have you --

17             MS. KAPNER:  How about -- can we do December 31st,

18   even though --

19             THE COURT:  Well, I will tell you that I don't like

20   Friday deadlines --

21             MS. KAPNER:  Okay.

22             THE COURT:  -- so let's do December 30th.

23             MS. KAPNER:  Okay.  Let's do the 30th, okay.

24             THE COURT:  Yeah.  Friday deadlines, in my

25   experience, always lead to Friday requests to extend the

1   deadlines, so the 30th.

2          MS. KAPNER:  That's a Wednesday request to extend.

3   Okay.  So that's fine, 30th.  Hopefully, I can get it back

4   sooner, and if not I will let you know as soon as possible if

5   we need more time.

6          THE COURT:  Okay.  That sounds good.  All right.

7          Is there anything else that you wanted to raise

8   with the Court or any issues or arguments you wanted to make?

9          MS. KAPNER:  No.  Do you want us to serve the

10  supplemental documentation on the borrower, as well?

11         THE COURT:  Yes.  Because while they technically

12  have not appeared -- I mean, the action is still ongoing.  So

13  at some point they're going to get copies of whatever

14  documents are filed by the Court anyway.

15         MS. KAPNER:  Okay.

16         THE COURT:  So yes.  Okay.

17         All right.  Thank you very much for your

18  preparedness today.  It's been very, very helpful and very

19  much appreciated.

20         And if there is nothing else, then we are adjourned

21  for today.

22         I wish you and your family a very safe and healthy

23  holiday season.  And thank you again.

24         MS. KAPNER:  Can you tell Judge Briccetti in the

25  Southern District how prepared I was.

1        THE COURT:  I'm sorry?

2        MS. KAPNER:  Judge Briccetti in the Southern

3   District last week did not think I was as prepared as you

4   did, so --

5        THE COURT:  All right.  Well, every judge does what

6   they think is best.  And you've answered my questions, so.

7        MS. KAPNER:  Okay.  Good.

8        THE COURT:  That's what I have to gauge.

9        MS. KAPNER:  It's helpful to also be able to access

10  things if you don't bring them to court, you know, if you're

11  at your computer.

12       THE COURT:  Yes.  I would agree.

13       All right.  Thank you so much.

14       MS. KAPNER:  Thank you, Judge.  Have a good day.

15       THE COURT:  Bye.

16    (Proceedings adjourned at 10:46 pm)

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATE

2          I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter.-

5

6                                    January 8, 2022

7
     *Terry Rubino*
8

9    _____     _____

10   Terry Rubino                        DATE

11   Legal Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24

25